IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KEVIN REID ALTHOUSE #861608 | § | |
| v. | § | CIVIL ACTION NO. 6:07cv22 |
| DR. ROBERT ROE, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Kevin Althouse, proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Althouse complained generally about the medical care which he received, largely revolving around his claim that he suffers from Attention Deficit Hyperactivity Disorder (ADHD). The Magistrate Judge conducted a lengthy evidentiary hearing and received and reviewed copies of Althouse's medical and grievance records, which are extensive.

After review of the pleadings, testimony, and records in the case, the Magistrate Judge issued a Report on January 30, 2008, recommending that the lawsuit be dismissed. The Magistrate Judge first concluded that Althouse has filed at least three lawsuits or appeals which have been dismissed as frivolous or for failure to state a claim upon which relief may be granted, and so he is subject to the three-strikes bar of 28 U.S.C. §1915(g). In this connection, the Magistrate Judge stated that Althouse did not pay the filing fee and did not show that he is in imminent danger of serious physical injury, rejecting Althouse's claims to the contrary.

The Magistrate Judge then went on to review the merits of Althouse's claims. In so doing, the Magistrate Judge first observed that Althouse's medical records show that he is receiving a

1

significant amount of care, and that Althouse's disagreement with the quality of this care does not rise to a constitutional level.  The Magistrate Judge specifically noted that Althouse's prison records do not contain a diagnosis of ADHD, and that the standard treatment for ADHD, consisting of amphetamine-based medications, is not available within TDCJ.  Instead, Althouse was given a medication called Tegretol, one of the purposes of which is to treat persons with impaired judgment, which is the harm which Althouse cites as a result of ADHD.  The Magistrate Judge stated that "the fact that Althouse did not receive the medication which he would have preferred, or that the medication which he received was not as effective as he would have liked, is not proof of deliberate indifference to a serious medical need."

The Magistrate Judge also recommended dismissal of Althouse's claims under the Americans with Disabilities Act.  Althouse specifically alleged that he was denied access to recreation because of the lack of closed captioning on the televisions in the dayroom, but the Magistrate Judge determined that this claim failed to show a violation of the ADA.

Althouse complained that a letter which his father sent, showing that he suffered from ADHD, had been lost, and that he did not receive appropriate responses to his grievance, but the Magistrate Judge determined that this contentions did not set out constitutional violations.  He also complained about his work restrictions and again asserts that the medical care which he received has been deficient, but the Magistrate Judge concluded that Althouse failed to show that he had been the victim of deliberate indifference.  The Magistrate Judge therefore recommended that Althouse's lawsuit be dismissed.

Althouse filed objections to this Report on March 20, 2008, and supplemental objections on March 24.  In his first set of objections, Althouse begins by complaining that the Magistrate Judge said that he has no diagnosis of ADHD, whereas in fact he does have such a diagnosis.  He points to a number of exhibits which he submitted with his supplemental complaint, but only two of these exhibits, an affidavit from his father and a letter from a retired elementary school principal, make reference to a diagnosis for ADHD.  Other diagnoses given to Althouse, as reflected in these

2

exhibits, include: personality trait disturbance, passive-aggressive personality, anti-social personality, schizophrenia, and bi-polar disorder. The affidavit from his father indicates that Althouse was diagnosed with ADHD at the Family Guidance Center in Reading, Pennsylvania, through the use of Ritalin, apparently in childhood. However, the Ritalin had to be discontinued because of the side effects, including listlessness and substantial weight gain. A psychiatric note from the Reading Hospital and Medical Center, from Althouse's early adulthood, says that Althouse's psychomotor activity is normal, there is no evidence of any thought disorder, that he is not psychotic, and that he has a character disorder in that he has no capacity to delay gratification. None of the medical records in Althouse's exhibits make any reference to a diagnosis of ADHD.

In any event, the Magistrate Judge did not say that Althouse had never been diagnosed as suffering from ADHD, as Althouse asserts, but rather that TDCJ's records did not reflect a diagnosis of ADHD. Althouse says that on February 26, 2003, a TDCJ physician named Dr. Limsiaco diagnosed him with ADHD, but the medical record he attaches as an exhibit does not support this conclusion; this record (pp. 62 and 63 of the exhibits attached to the supplemental complaint) shows that Althouse told Dr. Limsiaco that he had a history of ADHD, but the actual diagnosis made by the doctor was "depressive disorder."

Althouse also refers to an order from the federal district court in Dallas County, appointing him counsel in a civil case, in part because of Althouse's representation of his mental condition to that court. The fact that the court in Dallas determined that Althouse's representations concerning his mental status warranted appointment of counsel in another civil case does not show that TDCJ personnel acted with deliberate indifference to him, nor that he is in imminent danger of serious physical injury.

In effect, Althouse asserts that the fact that he suffers from ADHD, *by itself*, is sufficient to show that he is in imminent danger of serious physical injury. He says that because of his ADHD condition, he is in constant danger because he might at any time act on impulse and thereby place himself in peril. By contrast, in <u>Ciarpaglini v. Saini</u>, 352 F.3d 328, 330 (7th Cir. 2003), the only

circuit court decision to hold that allegations of discontinuation of medication for ADHD and panic disorder could satisfy the imminent danger prong, the plaintiff alleged that his panic attacks caused him to suffer heart palpitations, chest pains, labored breathing, choking sensations, and paralysis in his legs and back.   These allegations are specific assertions of concrete harm, unlike Althouse's generalized speculation that he might act on impulse and thereby place himself in danger.   No court has held that the simple fact of ADHD by itself is sufficient to satisfy the imminent danger prong, as Althouse contends.   *See also* <u>Desroche v. Strain</u>, 507 F.Supp.2d 571, 583 (E.D.La. 2007).

In a similar vein, Althouse complains that the Magistrate Judge observed that he was being treated with Tegretol for impulsivity, but points out that Tegretol is not a treatment for ADHD and that it was not effective.   Whether or not Tegretol is a treatment for ADHD, it is a recognized treatment for impulsivity, as the Magistrate Judge observed, which is the symptom which Althouse complains is placing him in danger.   The fact that the medication was not as effective as Althouse may have wished does not show that the prison officials were deliberately indifferent to his medical needs.

Next, Althouse complains that Ronnie Hill, a named defendant in the lawsuit, was present at the <u>Spears</u> hearing, over his objections.   He says that the Magistrate Judge "allowed him [Hill] to make an observation on the merits of Plaintiff's assertion that he suffers ADHD and in her report she is again relying upon his judgment regarding the merits."

At the hearing, Hill testified that it is difficult to diagnose adult ADHD and that the treatment for ADHD involves amphetamine-based medications which are not available in prison.   He noted that the prison medical records contain no diagnosis for ADHD and that Althouse's demeanor at the hearing was not consistent with ADHD, in that Althouse was able to recall dates of past events without difficulty and to remain calm and focused during the hearing.

Althouse has not shown that any of this testimony was objectionable or should have been excluded.   The fact that Althouse's prison medical records contain no diagnosis for ADHD was confirmed by the Court's own perusal of these records, and Althouse's demeanor at the hearing was

4

clearly visible and apparent.  Hill did not comment directly on the merits of Althouse's claims. Althouse's objection on this point is without merit.

Althouse points to a grievance which he filed in which he was told that the current treatment for ADHD is with medications not available within TDCJ.  He says that this shows that the prison officials are "intentionally refusing to treat his condition."  The fact that prison officials do not make amphetamine-based medications available to prisoners is not proof of deliberate indifference, particularly in light of the fact that Althouse's impulsivity was treated with Tegretol.  Althouse's complaints regarding the relative efficacy of Tegretol do not show that a constitutional violation occurred.  His claim on this point is without merit.[1]

Althouse next turns to the Americans with Disabilities Act, arguing that he is "disabled" within the meaning of the term.  To the extent that Althouse seeks to bring his claims for inadequate medical care under the ADA, this request is misplaced.  The courts have held that a lawsuit under the Rehabilitation Act or the Americans with Disabilities Act cannot be based on medical treatment decisions.  *See* Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005); Fitzgerald v. Correctional Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (ADA does not create a remedy for medical malpractice).

Althouse also complains that he has a right to participate in the "recreational activity" of watching television, but that he is easily distracted, so when he is in a crowded dayroom with two television sets, each tuned to a different station, his impairment prevents him from being able to understand the program he is watching without closed captioning.  As the Magistrate Judge stated, no case in any jurisdiction, state or federal, has found the provision of closed-captioned television for persons suffering from ADHD to be mandated under the Americans with Disabilities Act; furthermore, Althouse has not shown that he has been discriminated against because of his disability. This contention is without merit.  Althouse also says that the medical condition of his jaw is fragile

---

[1]In addition, the affidavit from Althouse's father says that Ritalin treatment, which Althouse says would be more appropriate, had to be discontinued because of the side effects, including listlessness and substantial weight gain,

and that he was assaulted by other inmates when he complained about the lack of closed-captioning. This does not make the failure to turn on closed-captioning an actionable claim under Section 1983 or the Americans with Disabilities Act.

In the next section of his objections, Althouse says that the State of Texas has created a liberty interest to the effect that a prisoner completes required programs, maintains a clear conduct record, and addresses the problems which brought him to prison, parole "should follow as a matter of course." He cites Tex. Gov. Code art. 508.144, but this statute requires the Parole Board to develop guidelines that are the basic criteria on which a parole decision is made, base these guidelines on the seriousness of the offense and the likelihood of a favorable parole outcome, and ensure that the guidelines require consideration of an inmate's progress in any programs in which the inmate participated during his term of confinement. Nothing in the statute creates a liberty interest which accrues to inmates or ensures that parole shall "follow as a matter of course." To the extent that Althouse contends that this statute creates a liberty interest which must be enforced through an order giving him the treatment he believes appropriate, his claim is without merit.

Althouse asserts that the failure to perform surgery on his broken collarbone amounts to deliberate indifference to his serious medical needs. He was scheduled for surgery at one time, but this had to be postponed because of his collapsed lung. As the Magistrate Judge observed, surgery is often not done at all on broken collarbones because they heal without it. Although Althouse says that his need for surgery is a serious medical need, the medical records show that he has advised the nursing staff on at least one occasion, after suffering the broken collarbone, that he was able to do sit-ups, push-ups, and lift weights. Althouse has not shown a constitutional violation in the treatment of his broken collarbone.

Althouse further argues that Nurse Bobby Burns should be liable because in January of 2004, he told Burns that he was having chest pains, and Burns said that it was a strained diaphragm muscle and that if he stopped exercising for a few days, the pain would go away. Althouse followed this advice and the pain did go away. Almost two years later, he says, he again experienced chest pains,

and did not seek medical care because of Burns' advice, but this time the chest pain turned out to be a collapsed lung.  Althouse's notion that the apparently accurate advice given in January of 2004 renders Burns liable for an incident which occurred in December of 2005 is plainly without merit. He asserts that Burns "misdiagnosed his collapsed lung" but offers nothing to show that it was in fact a collapsed lung which he had in January of 2004.  Finally, Althouse takes issue with the Magistrate Judge's statement that he is receiving medical care for his condition, but simply disagrees with this care; a review of Althouse's extensive medical records shows that he has in fact received a considerable quantum of medical care.  His objection on this point is without merit.

Althouse also filed a set of supplemental objections, consisting of additional exhibits.  The first of these is a letter from his father, Lawrence Althouse, dated January 14, 2008, addressed to the District Attorney's Conviction Integrity Unit in Dallas.  This letter asserts that Althouse was diagnosed at age five with ADHD, and that as a result, Althouse has very little impulse control, acting impulsively rather than after due thought; in other words, thoughts are immediately translated into actions, instead of first going through "the filter of reason determining right and wrong."  He complains about Althouse's court-appointed attorney and asks that his conviction be re-examined. Attached to this is a copy of the affidavit from Lawrence Althouse which has been discussed above.

The next item is a letter from an individual named Kermit Bartholomew, a retired principal from Reading, Pennsylvania.  Bartholomew says that he knew Althouse from early elementary school days, and says that if Althouse was in public school today, he would be diagnosed with ADD or ADHD or SED (serious emotional disturbance), and the school system would work with them. At that time, however, they simply did not know how to diagnose and treat the problem.

Next, Althouse attaches a copy of his grievance in which he complains that he is being denied treatment for ADHD, which causes him to be at risk to himself because he does not have the biological filter to screen impulses, but instead acts off of thought.  He says that he cannot focus attention, has limited insight, is easily distracted, and has a disregard for dangerous situations.  For example, he cites his rushing out of the shower in October of 2004, resulting in a broken collarbone,

7

walking around for three days with a collapsed lung, the fact that he cannot understand what is on TV, and is having a hard time learning in the vocational course he is taking.  The response to this grievance was that his report of depression is being treated with a mood stabilizer called carbamazepine [Tegretol] and citalopram, that he was scheduled to see the provider again on October 18, 2006, and that the current treatment for ADHD is with medications not available to prescribe in TDCJ.  This grievance was discussed by the Magistrate Judge in her Report.  The fact that Althouse was being treated with medications which he did not believe were appropriate, and that the treatment he wanted was with medications not available within the prison because of their amphetamine base, does not show a constitutional violation.  Furthermore, although Althouse says that the standard ADHD treatment is with Ritalin, the affidavit from his father says that Ritalin therapy had to be discontinued because of the side effects.

Next, Althouse furnishes an information sheet from several Internet websites, including http://www.webmd.com, http://www.add-adhd.com, and http://www.adultadd.com. discussing adult ADHD. One of these sheets, labeled "ADD/ADHD, Vision, and Learning," appears to indicate that ADHD has been over-diagnosed and that some children who have been diagnosed as ADHD may in fact have a vision impairment rather than the disorder; it quotes an individual named Dr. Edward Hallowell as saying that "many people in today's hurried world may look like they had ADD when they really don't."

Althouse goes to include a self-assessment test and treatment possibilities from http://www.adultadd.com, a definition of ADHD from the DSM-IV psychiatric manual, and an article from Goodhealth Magazine about attention deficit disorder.  None of this information indicates that the Magistrate Judge was in error.  Althouse's objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings, records and testimony in this cause, as well as the Report of the Magistrate Judge and the Plaintiff's objections thereto.  Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit.  It is accordingly

8

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court.  It is further

ORDERED that the Plaintiff's *in forma pauperis* status is REVOKED and that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and as barred by 28 U.S.C. §1915(g).  Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**So ORDERED and SIGNED this 7th day of April, 2008.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**